Your Honor, Bob Kovacevich for the appellants, Tonasket and Miller in this case. I'd like to start with the fact that the Colville Tribal Code has all of the statutes regarding whether or not cigarette taxes are going to be charged by the tribe. And I've attached those to the reply brief. The one tribal code section is 6811, states that a wholesaler must enter into a contract with the Colville tribe agreeing to abide by the terms of the tribe-state contract. I submit that there is no consensual relationship between the tribe and a wholesaler to Mr. Tonasket. This is a well-recognized rule, the Montana v. United States, 450 U.S. 544, Atkinson Trading v. Shirley, 532 U.S. 645. Counsel, we have the same issue as in the previous case, though, of sovereign immunity, because once again you're going to the merits of it. Is the analysis in this case of sovereign immunity any different than it would be in the other case? I don't think there's any material difference, Your Honor. There may be something that I don't recognize, but to my knowledge at this time I don't see any critical difference between the issue in both cases of sovereign immunity. The principle here, again, Mr. Miller and different from the prior case, we don't have the res judicata argument. There must be a nexus for tax and regulation. As the courts know, the nexus was refused in a case called Red Earth v. U.S. 657 Federal Third 138, which I've argued in the brief. It says that a wholesaler who is outside of the tribal boundaries has no right under the due process laws to be required to affix cigarette taxes. That's a Second Circuit case. I submit it's exactly in point. It talks about the PACT Act, but it defines the same thing. A delivery sale for the buyer is not within the physical presence of the tribe. And this puts the court into a spot as to whether or not due process really is the issue. Now, the well-known case of Colville and Justice Rehnquist in the Colville case says that you must always have due process when you're going to talk about even taxes by a tribe. So we have here an issue where the wholesalers and, of course, on cigarette taxes, the requirement always is that the wholesaler buy the tax stamps and affix them before they deliver them to the retailer. The retailer here is Mr. Tenasket, who's in court today. So we don't have any nexus. We don't have any consensual relationship by the Colville tribe to the person who has the incidence of tax on him, Dan Miller. And the Yakima case, as all cases say, that the incidence of tax is always on the purchaser of the cigarettes. Counsel, what is your response to the alternative ground on which the district court ruled, which is the absence of joining the state of Washington as a party since, in essence, you're trying to undermine the compact? The Wilbur case that argued in the prior case, Your Honor, Wilbur versus U.S. Yeah, where the state has no, cannot charge a cigarette tax where there is a compact, in effect, and Mr. Tenasket here had a license to sell cigarettes. So the state has nothing to do, and by statute. But, Counsel, if we accept your argument that the tribe had no authority to impose the tax, why wouldn't then it fall to the state to collect the tax? They would have to redo the compact, Your Honor. Exactly my point, and I think that was exactly the district court's point. If you're successful, the compact, as written, would be partially ineffective, and the state has an interest in whether or not to renegotiate it, how to handle it. Why don't they have a financial interest in this? Your Honor, I think disabled rights versus Las Vegas, which I cited at page 34 of our reply brief, 375 Federal 3861, applies. It says where you have an indefinite agreement, they're not, the joinder rules do not apply. What do you mean by indefinite? Where that happened to be at least. No, what's indefinite here? The state is, has an interest in uniformity of taxation. It has an interest in whether its compact is or is not valid. It has an interest in maybe collecting taxes if somebody else isn't. What's indefinite about that? I think I used the wrong word. It's indefinite. It expires in eight years, and so there will be no compact in eight years unless it's renewed. Well, that's like saying a party to a contract isn't an important character in court because we're only going to sell you wheat for eight years, and after that we're not selling you any more wheat. I guess I don't understand why that makes them less. Because it has to do with joinder. You join a party, Your Honor, and that party has no other interest, even if it had an interest to start with, because it expires. That's what a disabled right says, Your Honor, if I can represent to the court. What's your response to the argument that your clients lack standing because there's no opportunity for an exemption, which is essentially what they're asking for as a tax exemption from the tribe? I'll answer that. If I can add one more thing to my argument on necessary party, the tribe, which is obvious from the cases here, enacted the statutes and also certainly defends the state if the state has any interest. Now, getting back to standing, the Red Earth case cites Bond v. United States, 131 Supreme Court 2355, a 2012 U.S. Supreme Court case, and that case said they're standing even where the federal constitutional principles involve in state court. It's a criminal case, and Red Earth says standing, plus Plains Commerce. I guess maybe I didn't ask the question in a very helpful way. One of the requirements of standing is that if the lawsuit is successful, there can be a potential or theoretical redress of the problem. And in this case, the argument is that they cannot possibly obtain any relief because there's no available tax exemption for them under the tribal system. We've alleged Article III standing. If there's no tax available, if I understand the court right, they get their money back. So they've been injured by the continuous collection of the taxes, and that's Article III standing. Okay, and so your theory is that it doesn't matter if they have an exemption available. If it's a constitutional problem, you get your money back anyway. With ongoing injury in Plains Commerce, which is a key case also, finds Article III standing where nonmember persons are involved in tribal matters. How do you square that answer with the argument that I think you're making in both cases, that you're not really seeking your money back, you just want future injunctive relief? We're seeking both, Your Honor, the same reply. I am being repetitive. Well, no, but if ‑‑ no, I think I understand your position. If you have one allegation that stands up, Your Honor, we still have jurisdiction. I understand your position. And the complaints are similar. We've asked for an injunction in this case, too, and declared it to our judgment. The Colville case, too, which is relied on, I mentioned as Justice Rehnquist stated at 447 U.S. 182, in order to collect the tax there must be a relationship between the state and the burdened merchant to satisfy principles of due process. I want to reiterate that we're placing the incidence of tax on a nonmember, nonresident, and Atkinson totally applies. That's at 532 U.S. 645. I've argued that extensively. There can be no tribal tax on a transient nonmember, which is what we have here. In the Yakima case, 658 Federal 3rd 1078 in this circuit, unequivocally holds that the incidence of tax is on the purchaser. There's also a case in New York where the cigarettes were stolen en route from a shipper, and the New York case held that there is no violation because the theft did not incur a cigarette tax due to the fact that they were stolen and they were not sold as such. That case, which I did not cite, is- Counsel, if you didn't cite it, would you, after you're finished, would you fill out a sheet for the deputy clerk and she'll- Thank you, Your Honor. I have about three cases that I think are important that I did not cite. Then if you'll fill out a sheet for those and give a copy to opposing counsel and one for the court, and the court will make copies. I believe that's-I'll save the rest of the time for rebuttal. You certainly may do that, and we'll hear from Mr. Burleigh. Good morning. Good morning. It pleases the Court, I'm Richard Burleigh. I represent the Colville Confederated Tribes and tribal officials, the appellees. The tribes have been sued by a tribal member, cigarette retailer, and a non-Indian cigarette purchaser who have alleged that the tribe's tax compact with the State of Washington violates their rights. The retailer, Mr. Tenasket, is licensed by the tribes and his smoke shop is on trust land on the Colville Reservation. We've pointed out three threshold jurisdictional grounds that require dismissal of the case. The district court chose one and dismissed on grounds of tribal sovereign immunity. The district court also noted that the State has significant interests in the case that may make it indispensable but didn't explicitly rule on that ground because it was dismissing in any event on the grounds of sovereign immunity. On appeal, we've argued a third ground, to challenge a tribal tax on third-party wholesalers who aren't before the court. We respectfully ask the Court to affirm dismissal on any or all of those grounds. Your third ground, in a way, is more like your indispensable party ground. I guess you can argue them in any order, but I had some difficulty following your argument about standing because if the plaintiffs are successful, assuming everything else, they would get money. So if one accepted everything about their theory, it's hard to see why they don't have standing. It seems to me you're making another indispensable party argument that the wholesalers would have to be before the court also. Well, we haven't looked at it that way. The chief indispensability argument that we make is the absence of the State of Washington, which the tribes certainly do not represent and who has very different interests than the tribes have, that compact, resolved decades of disputes. As far as Article III standing, if we have a tax on someone who's not before the court, there are rules about who gets to complain about those taxes. In our case, which may be different from the Puyallup situation, in our situation we have a tax that's been levied on wholesalers and there's no requirement under the tribe's code or under the compact between the Colville tribes and the State that that tax be passed down to the cigarette retailer or the ultimate purchaser. It just becomes a cost of doing business, but it doesn't have to go down in any particular amount. Right. Now, we believe, to the extent we understand the Puyallup situation, we believe that the case against the Puyallups is defective as well, but the way the incidence of taxation works is different at Colville. There was a requirement that the tax be passed down and collected from the purchaser at Puyallup, but not at Colville. There is no requirement that that tax be passed down. I understand. Okay, so under Wagnon and under this court's ruling in Yakima v. Gregoire last year, the incidence of the taxation issue would be resolved differently. The incidence would clearly be on the wholesaler and it would not be on the customer or on the retailer. We have an additional issue in standing, and again, we're going in that order, I guess. We don't have a redressable injury. Colville says the tribes can tax the transaction. They can tax the retail transaction. They've chosen not to. Under the compact, the tribes have not taxed the retail transaction. Their tax is at the wholesale level. So if this were set aside, the question is, is the wrong redressable? And if the compact were gone, appellant's brief has admitted, in their main brief at pages 36 and 39, that the state could go after his client. And we know under Colville that the tribes are permitted to tax retail cigarette sales. So if appellants win this case, he'd be worse off. He would face a tax from the state and he'd face tax from the tribes. So that's also a difference from our – when we're talking about indispensability from the point of view of having the state be a party, we're talking about standing. There's a redressability issue there. There's also an issue about whether anybody has a particularized interest or could suffer a particularized injury, an injury in fact, if what they're really losing is a tax exemption that the Supreme Court, that the U.S. Supreme Court in Colville has held that they're not entitled to. You know, that was decided in 1980 that tribal retailers, cigarette retailers, do not have a right under federal law to market a tax exemption. And that's – I mean, if we're looking at Ex Parte Young, what is the federal right that appellants are really trying to vindicate here? They're trying to vindicate a supposed federal right to market a tax exemption. And there is, unfortunately or fortunately, since 1980, there is no federal right to market a tax exemption anymore.  Yes, Your Honor. It is an issue of subject matter jurisdiction. So there's a huge burden, there's a serious burden on appellants, well plaintiffs below and appellants here to show that there is subject matter jurisdiction. They're presumed to lack jurisdiction unless they can – the courts are presumed to lack jurisdiction over their claims unless they can show it. So that's a high burden. There's no presumption about the truthfulness of their factual allegations. The tribes furnish some declarations below and materials from their chief tax official. There have been no counter declarations in this case. There's nothing in the record. And so where do we stand on sovereign immunity in that context? Well, the law on sovereign immunity is clear. As a general matter, the federal courts cannot grant any relief against tribes except for habeas corpus relief unless Congress either unequivocally abrogates immunity or the tribe expressly waives it. Sovereign immunity applies on and off the reservation and it protects the tribe's commercial as well as governmental activities. There's clearly been no waiver of the tribe's sovereign immunity. The appellants have tried to cobble together some kind of waiver argument about entering into this compact with the State of Washington. The compact is explicit that it preserves the sovereign immunity of both parties, the tribes and the state. It's right there in Section 1.1. The appellants have argued that the tribes have somehow waived their sovereign immunity by implication through their actions, but those implied waiver theories are invalid as a matter of law. The courts have repeatedly held that you cannot waive immunity by implication. It must be expressed. And then we get to ex parte young, which is always, ex parte young is obviously, you know, it's supposed to be a narrow exception, but it's the exception. If the court were convinced that something outrageous is going on, that it would be necessary to vindicate a federal right by providing for declaratory or injunctive relief against future action, then the courts have found that they can move forward against tribal officials to prevent future violations of federal law. But there's at least three major problems with appellants' argument under ex parte young. First of all, you can't just wave it around and get a waiver of sovereign immunity. The courts have been clear that you can't just say ex parte young, and all of a sudden sovereign immunity goes away. And that's exactly what's happened here. Second, there's a very important rule that you can't seek retrospective relief, and that's the appellants seek plenty of retrospective relief here, as also against the Puyallup tribe. They seek damages. They seek attorney's fees. They seek refunds. And basically you're not supposed to be able to do that. And third, you're supposed to, I mean, ex parte young is supposed to be triggered only if absolutely necessary to vindicate a federal right. And they have not been able to identify or even make anything, any kind of showing at all, any kind of credible showing that there's a federal right they have that must be vindicated by setting aside the compact. I mean, in addition to all the other problems that setting aside the compact would have in terms of indispensability of the state and so on, they make two, I would say, they make a whole medley of supposed federal rights that are at issue here that might be relevant to ex parte young. But the chief ones are, one, they challenge the tribe's taxing authority. And number two, they wave around the Sherman Act, you know, that there's something anti-competitive about the compact. Well, in terms of the tribe's taxing authority, that's pretty clear. I mean, Colville decided explicitly that the tribes can tax cigarette sales. It just so happens that in this particular case, the tribes are not taxing Mr. Kravacevich's clients. The tax is solely on someone else who isn't here. And there are rules about third-party standing in tax cases that are also fatal to appellant's claim here. And then in terms of the anti-competitive, supposed anti-competitive nature of the compact or an anti-competitive effect of the compact, that fails also as a matter of law. First of all, there's no indication that the antitrust laws apply to tribes at all. They don't seem to apply to states, at least since 1943, according to the Supreme Court under the Parker v. Brown. And the same analysis, we believe, applies to tribes. But even if antitrust laws did apply to the tribe, there's nothing that the tribe has done to set prices. They haven't set or done anything else on an anti-competitive basis. And nothing's been identified. Nothing's been, you know, shown in our declarations. There's been no counter to any of the statements in our declarations. There's been no fixing of prices, either at the wholesale or retail level. In terms of restricting who the appellants, Mr. Tenasket can buy his cigarettes from, he can buy cigarettes from probably more people than anyone else in the state. In addition to all state-licensed retailers, state-licensed wholesalers, he can buy from at least two classes of self-certified wholesalers. He can buy from virtually anyone who commits to abide by the tribal state compact. There's just no antitrust violation, even if the antitrust laws apply to the tribe. So if you can't even identify and explain a federally protected right that this compact would hurt, that should not be used as a doorway that blasts open the narrow exception of ex parte young to throw out core principles of tribal sovereign immunity. You know, Burlington Northern, when a tribe reaches out to tax a railroad, you know, if the courts believed that there was something where a tribe was reaching far beyond its authority and had to be stopped, ex parte young would provide an excuse, perhaps. There is nothing like that here. The only thing that appellants have asked that be stopped are things that the tribe is allowed to do. And if you have any more questions, Your Honors, I'd be happy to try to answer them. Judge Noonan, do you have anything? No. I think we don't. Thank you. Thank you very much. Mr. Kovacevic, you again have reserved some time. Regarding the trust land argument, we're talking about activity that occurred on trust land. And the cigarette selling, Terry Tenasket's grandparents' tax court memo in 1985 contested the federal income tax. And the court held that, and I'll add this to citation, the court held that, the tax court memo 1985-365, United States Tax Court, that cigarette selling had nothing to do with deriving any benefit from the land. We're talking about here about activity. The straight case, 520 U.S. 438, holds that a trust land is the same as non-Indian fee land. The cases at consent and some of the other cases talk about tribal land, which is land owned by the tribes. The Bureau of Indian Affairs handles trust land and not tribal land. So land has nothing to do with this. I believe counsel argued that the incidence of tax was on Mr. Tenasket, the retail seller. That's not the law. I think his argument was that the incidence of the tax was entirely on the wholesalers, and that's why your clients like standing. Thank you. Regardless whether it's the wholesale or the retailer, it's always, I submit to the court, regardless of the government that imposes the tax, it's always on the retail purchaser, the consumer. And to my knowledge, and I've read quite a few of these cases, there's no cigarette tax that is on anyone up the chain other than the consumer. Regarding sovereign immunity, the Solis v. Matheson ignored – well, I'm sorry, that's wrong. Article 1, Section 8, Clause 3 talks about, obviously, the federal law determines Indian matters, including the Western Constitution, 26-2nd, says we agree that – and that was made in order to get the state into the union – that Congress has exclusive control over Indian matters. There's certainly federal law here that applies. As far as the Colville tribe case, the famous Colville case in 1980, the tribe was not a competitor in that case. We lose a little bit of sight of what's going on here. A non-seller, a tribe, says to a wholesaler that they don't control, you must charge $30 or more on your tax stamps, and therefore Terry Tenasket, the retailer, in order to survive, has to add the $30 in order to make a profit. In the Puyallup case, the statute says you must sell at the wholesale price you pay for them plus the tax. This is classic price-fixing. And the case, Judge Kosinski on San Diego thoroughly refutes that and says every time you have any interference with a price to a consumer, that's price-fixing and it's per se violation. I don't think there's any doubt that there is per se. Additionally, we haven't had a chance. Everybody says they didn't prove this. In the Puyallup case, all our discovery was turned down. We allege a violation. Counsel, you're arguing this case now and your time has expired, so if you have a sentence or two to wrap up on this case, we'd be happy to hear it. Thank you, Your Honor. I'd like to close with we've alleged Article III jurisdiction on standing at page 30 of the excerpts in our complaint. We've also alleged at page 55 several pages of why we want prospective relief. Thank you, Your Honor. Thank you very much. The case just argued is submitted. We appreciate counsel's arguments, and we will now be in recess for about 15 minutes.
judges: Noonan, Graber, Rawlinson